THE MARGOLIS LAW FIRM LLC
110 Wall St., 11th Floor
New York, NY 10005

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 2 2 2010 ★

PLEASE REPLY TO:
The Margolis Law Firm, LLC
5 Becker Farm Road, 4th Floor
P.O. Box 420
Roseland, NJ 07068-0420
Attorneys for Plaintiffs

BROOKLYN OFFICE

UNITES STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**CV 10 - 5943**

**JOHNSON**

**MANN. M.J.**

| | |
|---|---|
| LEE DODGE, INC. d/b/a BROOKLYN AUTO GROUP, and ROBERT A. LEE, JR., individually, | Civil Action No.: |
| Plaintiffs, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| NEXTEPPE BUSINESS SOLUTIONS, INC., EAST HILLS CHRYSLER-PLYMOUTH, INC. d/b/a EAST HILLS CHRYSLER, JEEP, DODGE, et al., JOHN DOE ENTITIES 1-100, and JOHN DOE INDIVIDUALS 1-100. | |
| Defendants. | |

Plaintiffs, Lee Dodge Inc. d/b/a Brooklyn Auto Group, (collectively "Plaintiff" or "Brooklyn Auto Group"), and Robert A. Lee, Jr. ("Mr. Lee"), individually, by way of Complaint against Defendants Nexteppe Business Solutions, Inc. ("Nexteppe") and East Hills Chrysler-Plymouth, Inc. d/b/a East Hills Chrysler, Jeep, Dodge, et al., (collectively referred hereafter to "East Hills"), states as follows:

## THE PARTIES

1. Plaintiff Brooklyn Auto Group is a corporation with its principal place of business at 2286 Flatbush Avenue, Brooklyn, New York, 11234. Plaintiff is a citizen of the State of New York, County of Kings and is an authorized/franchised Chrysler Group motor vehicle franchisee that sells and services new and used Chrysler, Dodge, Jeep and Ram brands of motor vehicles, and parts therefor.

2. Plaintiff Robert A. Lee, Jr. ("Mr. Lee") is a citizen of the State of New York, County of Nassau, and is the dealer principal and sole owner of Plaintiff Brooklyn Auto Group.

3. Defendant Nexteppe Business Solutions, Inc. ("Nexteppe") was incorporated in the state of Georgia in 2000 and has its principal executive office situated at 75 Maddex Road, Suite 102, Buford, Georgia. Nexteppe has also registered with the Georgia Office of the Secretary of State a business address at P.O. Box 915, Sayville, New York, 11782. Nexteppe registered with the New York State Department of State in 2004.

4. Defendant East Hills Chrysler-Plymouth, Inc. d/b/a East Hills Chrysler, Jeep, Dodge, et al. was incorporated in New York in 1975 and has its principal place of business and conducts business at 2300 Northern Boulevard, Greenvale, New York, 11548.

## JURISDICTION

5. This Court had jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 and is between citizens of different states.

6. This Court has jurisdiction over Defendants Nexteppe and East Hills because they are authorized to conduct business in New York; have sufficient minimum contacts in New York; or otherwise intentionally avail themselves of the market within New York through the promotion, sale, marketing, and distribution of Nexteppe's services and East Hills' vehicles to render the exercise of jurisdiction by the Court proper and necessary.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.

## STATEMENT OF FACTS

8. Brooklyn Auto Group is an authorized/franchised Chrysler Group dealership that sells and services new and used Chrysler, Dodge, Jeep and Ram brands of vehicles and parts therefor, which is located at 2286 Flatbush Avenue, Brooklyn, New York.

9. Mr. Lee is the dealer principal and sole owner of Plaintiff Brooklyn Auto Group.

10. By way of background, Brooklyn Auto Group began business operations in or around October 20092009. The dealership faced a challenging environment

2

in which to establish a new dealership, as it took over a defunct franchise. The previous Chrysler Group franchise had been terminated by Chrysler Group more than eight months before. The prior dealership had been completely mismanaged and had left behind a terrible reputation known for its poor customer service. Further, Chrysler Group itself, had filed for bankruptcy protection and became the subject of and recipient of United States government bailout funds.

11. As a result, Mr. Lee knew that the marketing and advertising efforts for Brooklyn Auto Group would be critical to its survival and fiscal well-being, and endeavored to create a targeted, strategic, and well-planned marketing campaign.

12. The Plaintiffs have expended substantial money, time and energy into Brooklyn Auto Group's marketing and advertising campaign, and have focused a significant portion of this budget on Brooklyn Auto Group's website.

## The Importance of Brooklyn Auto Group's Website

13. As with most industries, and the motor vehicle industry in particular, a dealership's online presence and internet advertising are crucial to its success, and have become the primary driver for generating sales and customer leads.

14. In fact, the importance of a dealership's website cannot be emphasized enough, and this phenomenon is only becoming more significant. According to the *J.D. Power and Associates 2010 U.S. Sales Satisfaction Index (SSI) Study,*[SM] a majority (79%) of new-vehicle buyers use the Internet during their shopping process. Nearly one-fourth (24%) of buyers in 2010 submitted an online request for quote to a dealer, and were, on average, more satisfied with the negotiation process and price paid. A J.D. Power report released in October 2009 found that, during the six-month period preceding a new-vehicle purchase, more than three in four new-vehicle buyers use the Internet to shop for their vehicle. Sixty-six percent of all new-vehicle buyers visit at least one automotive brand Web site during this time frame. A J.D. Power report released October 28, 2010 found that Internet usage among used car buyers has increased five points to 68 percent in 2010. Further, web traffic to dealership websites has increased, with 81 percent of shoppers reporting they visited the dealership's website. The report states, "The growth of dealership site visitation, combined with a decline in visits to dealer lots, indicate that dependence on dealers is still strong for buyers, but the preferred method of contact during the shopping process is shifting online."

## Developing www.brooklynautogroup.com with Nexteppe

15. In connection with operating Brooklyn Auto Group, Mr. Lee purchased several website domain names to associate with the dealership. One such domain name is www.brooklynautogroup.com ("Brooklyn Auto Group's website"), which is Brooklyn Auto Group's main website address.

16. In or around September 2009, Plaintiffs entered into an agreement with Nexteppe for it to custom design and maintain Brooklyn Auto Group's website, as well as for it to provide website hosting services.

17. Nexteppe is an automotive retail marketing company that provides online marketing strategies and services, including, but not limited to, custom designed websites, search engine optimization, viral marketing, mobile marketing, inventory management, social media marketing, and personalized new and used car videos. Upon information and belief, Nexteppe services approximately Three-hundred Fifty (350) dealerships, many of which are in the tri-state area, including New York.

18. Mr. Lee has had a relationship with Nexteppe, including its executives and account management teams, since Nexteppe's inception in 2001, when he hired it to design and maintain a website for his Lee Dodge, Inc. franchise, which was located in Farmingdale, New York at that time. Specifically, from 1992 to the present, and at all times relevant hereto, including Nexteppe's design and management of Brooklyn Auto Group's website, Mr. Lee has worked closely with Kenneth Dellaporte ("Mr. Dellaporte"), a principal of Nexteppe, as well as various account executives.

19. Thereafter, Nexteppe commenced the development of the website, and in the meantime, created and launched an interim placeholder webpage at www.brooklynautogroup which indicated that the full site was "coming soon."

20. In or around September 2009, Mr. Lee also obtained the services of Call Source, Inc. ("Call Source"), which provides businesses with special telephone numbers. Call Source records and catalogs every telephone call transmitted to the telephone numbers it supplies, in order for its business customers to track and analyze their marketing and advertising efforts. Accordingly, Brooklyn Auto Group has separate telephone numbers for each of its advertising channels, including but not limited to, websites, various newspapers, radio commercials, and direct marketing collateral. As a result, customer inquiries and leads can be attributed to whichever advertising channel's generated it by tracking the telephone numbers. Plaintiffs pay Call Source approximately $500.00 per month for these services.

21. During the website development process, Mr. Lee secured three separate toll-free telephone numbers from Call Source for Brooklyn Auto Group's Sales,

4

Parts, and Service Departments, respectively. Said telephone numbers would be prominently displayed on the bottom of every webpage within the Brooklyn Auto Group website for customers and internet users to easily access. Obviously, the point of said numbers to encourage internet users to contact the dealership by having a clear, toll-free way for customers to contact those departments within Brooklyn Auto Group. This feature furthers the main goal of the website – to generate sales leads and convert same to sales. Plaintiffs maintain comprehensive records and perform analysis on the marketing results achieved by the dedicated telephone numbers.

22. The website also had a "Contact Us" webpage whereby visitors can complete a form to submit an email inquiry, which is supposed to be routed directly to Brooklyn Auto Group through the website.

23. Brooklyn Auto Group's website launched in or around October 2009.

24. As part of Nexteppe's account services, Mr. Lee met with Mr. Dellaporte and/or other Nexteppe account managers approximately every four to six weeks to discuss the website's operation, evaluate its effectiveness by analyzing its traffic and user activity, and strategize about online marketing and advertising opportunities. There were consistent updates to the website in order to provide and promote a better user experience in an effort to steer more customers to the dealership.

25. During one meeting with Nexteppe, in or around late February 2010, Mr. Lee entered into an agreement with Mr. Dellaporte and Nexteppe for Nexteppe to commence an advanced Search Engine Marketing program, including, but not limited to a Search Engine Management ("SEM") and Search Engine Optimization ("SEO") advertising campaign on behalf of Brooklyn Auto Group. Mr. Lee was informed that search engine optimization is the infrastructure that makes a good website possible. Organic SEO means visitors see your dealership in their search results because of this solidly built infrastructure, and not because of paid advertising.

26. Plaintiffs paid Nexteppe an additional $7,000 per month for these advanced services, which increased Plaintiffs' total monthly Nexteppe bill to approximately $9,000 per month. This expense represents just one part of Plaintiffs' advertising expenditures, which also includes newspaper, trade papers, and radio advertisements, all of which encourage consumers to visit Brooklyn Auto Group's website.

27. The SEM/SEO advertising campaign was successful in generating increased visitor traffic to the website. For example, within the in the first month of implementing the SEM/SEO tactics, there were approximately more than two thousand (2000) additional site visits than in the prior month. Thereafter, the

amount of site visits steadily increased for the next six (6) or seven (7) months.

28. However, approximately four (4) to six (6) months ago, Brooklyn Auto Group stopped receiving telephone inquiries from its dedicated website telephone numbers, as well as email inquiries submitted to its website.

29. Brooklyn Auto Group has experienced financial difficulty in the past four months, which has involved pending litigation in this tribunal with Ally Financial Inc. ("Ally"), (formerly known as GMAC Inc. and the alleged successor-in-interest to GMAC LLC and General Motors Acceptance Corporation) regarding its vehicle inventory financing agreements with Ally. Said litigation is captioned Ally Financial Inc. and Ally Bank v. Lee Dodge, Inc. and Robert A. Lee, Jr., bearing Civil Action Number 1:10-cv-04702-NG-MDG.

30. While these issues have placed a financial strain on Plaintiffs, and have been a distraction from the usual operations of the dealership, Brooklyn Auto Group has not terminated its franchise, has not had its franchise terminated, and is otherwise remains in business.

## Defendants' Egregious Conduct Uncovered – Brooklyn Auto Group's Website Telephone Numbers Substituted with a Competitor's Numbers

31. On December 7, 2010, Mr. Lee was informed by a former employee, that, while working at Defendant East Hills, which is a competing Chrysler Group dealership, he learned that for approximately the past four months, though the exact timeframe is unknown, all the telephone numbers on Brooklyn Auto Group's website had been substituted for telephone numbers to East Hills. In addition, emails submitted to the Brooklyn Auto Group website were also being routed to East Hills. Apparently, for some unknown period of time and at least for the past four (4) months, East Hills was receiving and servicing an abundance of customer calls and email inquiries derived from the Brooklyn Auto Group website and intended for Brooklyn Auto Group, not East Hills.

32. Said former employee advised Mr. Lee that he had observed many customer calls received by East Hills in which customers believed they were calling Brooklyn Auto Group, and that a sales manager confirmed to him that this had been occurring, and that, East Hills had "taken over" Brooklyn Auto Group's business.

33. Immediately upon receiving this information on December 7, 2010, Mr. Lee accessed Brooklyn Auto Group's website via the internet to confirm same. Mr. Lee observed that the telephone numbers listed at the bottom of every page for Brooklyn Auto Group's Sales, Parts, and Service Departments, as previously described, were no longer the ones that he had secured from Call Source. Mr. Lee did not recognize the telephone numbers that were now on

Brooklyn Auto Group's website, nor had he consented, discussed, or provided authorization of any kind whatsoever to Nexteppe or anyone else for said numbers to be removed from the website or changed in any way.

34. Mr. Lee then proceeded to call each of the three unknown numbers that were now displayed on the bottom of every page within the Brooklyn Auto Group website, which were supposed to connect the caller to Brooklyn Auto Group's Sales, Parts, and Service Departments, respectively. Instead, each number connected Mr. Lee to East Hills, a competing Chrysler Group franchise. Then, Mr. Lee visited the homepage of East Hills' website. There, he found that East Hills' website had a very similar layout to Brooklyn Auto Group's website. At the bottom of East Hills website were the same three (3) phone numbers that were now also located at the bottom of Brooklyn Auto Group's website. Further, the bottom of East Hills website states that the website was created by Nexteppe.

35. Any existing or prospective customer who visited Brooklyn Auto Group's website was and would be connected to East Hills rather than Brooklyn Auto Group if he called the listed telephone numbers.

36. For example, upon telephoning the listed for Brooklyn Auto Group's Service Department, a receptionist for East Hills answered the call. Mr. Lee requested to speak to a service manager, and was transferred to a man stating that he was a service manager at East Hills. Mr. Lee informed the East Hills service manager that he thought he was calling Brooklyn Auto Group and was confused. The East Hills service manager advised Mr. Lee that Brooklyn Auto Group was closed and that East Hills was now handling its business. When Mr. Lee further stated that his vehicle had just been serviced at Brooklyn Auto Group in the past week, the East Hills service manager reasserted that Brooklyn Auto Group was closed and that East Hills would be willing to service its business. The East Hills service manager informed Mr. Lee that East Hills was located merely twenty (20) minutes away from Brooklyn Auto Group, notwithstanding the fact that East Hills is twenty-six (26) miles from Brooklyn Auto Group's location and approximately fifty (50) travel minutes away.

37. Mr. Lee then visited Brooklyn Auto Group's website page for its internet specials. Said webpage displayed photographs of various vehicles with the headline, "CALL US FOR THE BEST DEAL." At the bottom of the webpage were the telephone numbers which connected callers to East Hills.

38. In an effort to investigate what happens if a prospective customer were to submit an email to Brooklyn Auto Group through the website email inquiry function on the "Contact Us" webpage as previously described, Mr. Lee completed the requested inquiry form in the late morning on December 7,

2010, by supplying fictitious information so as to not expose his identity. Said information is customarily received and catalogued by the dealership in order to follow up with the individual expressing interest in the dealership.

39. At 1:22 p.m. on December 7, 2010, Mr. Lee received an email and a telephone voicemail message from the Internet Manager at East Hills regarding his inquiry and providing information about the East Hills dealership.

40. That same day at 1:52 p.m, Mr. Lee received an email at the email address he had provided in the inquiry form he submitted to Brooklyn Auto Group from a sales manager at East Hills, named Ed Whiffen. Said email stated that Mr. Whiffen had received his name through an inquiry into Brooklyn Auto Group and advised him to contact him if he was interested purchasing a new vehicle. Said email provided Mr. Whiffen's contact information at East Hills.

41. Mr. Lee immediately contacted his account manager at Nexteppe via cellular text message in order to ascertain why and how Brooklyn Auto Group's website had been unilaterally changed, and why telephone numbers for East Hills were now displayed thereon instead of Brooklyn Auto Group's. Mr. Lee's Nexteppe account manager responded that he was unaware of what Mr. Lee was referring to.

42. At approximately 2:55 p.m. that same day, after Mr. Lee confronted Nexteppe about its actions, Nexteppe removed Brooklyn Auto Group's website from the internet. Now, anyone attempting to visit the webpage finds an empty placeholder page stating that the website is "under construction."

43. The website has remained "down" or inactive since December 7, 2010.

44. Upon notification by Mr. Lee of the foregoing events and in an effort to perform due diligence, on December 7, 2010, counsel for Plaintiffs conducted further investigation into this situation by calling the telephone number listed on Brooklyn Auto Group's website. Representatives from East Hills advised the caller that Brooklyn Auto Group was, without limitation, closed, that its doors were "padlocked", that its telephone calls were being re-routed to East Hills, and that East Hills has been and continues to service all of Brooklyn Auto Group's accounts.

45. Mr. Lee received another follow up email from East Hills' Internet Manager on December 10, 2010 regarding his December 7, 2010 "email inquiry" submitted to Brooklyn Auto Group's website.

46. As a result of the foregoing, it can be reasonably concluded that Nexteppe caused to be substituted, authorized the substitution of, and/or should have known that Brooklyn Auto Group's telephone numbers were replaced with

8

those of East Hills on its website, as it had complete access and exercised control of the website, contrary to Plaintiffs' agreement therewith. In addition, it is clear that East Hills was actively involved as well, and, that, Nexteppe and East Hills were acting in concert to convert Brooklyn Auto Group's business to East Hills.

47. East Hills has been and continues to deceive the public, and has made and continues to make misrepresentations about Plaintiffs that are extremely harmful to Plaintiffs' business. In fact, it is now clear that Plaintiffs' sales and revenues were gravely and adversely impacted as a result of Defendants' conduct, inasmuch as sales and customer inquiries all but ceased.  It should be noted that Plaintiffs' marketing and advertising efforts outside of the internet were completely compromised as well since the same would customarily direct consumers to Brooklyn Auto Group's website, which for some unknown period, and as a result of Defendants' conduct, provided customers with telephone numbers to East Hills rather than Brooklyn Auto Group.

48. East Hills, by and through Nexteppe's conduct, has and will continue to convert Plaintiffs' business and its website to itself, including the most important asset- its customers.

49. Nexteppe and East Hills have conspired to deprive Plaintiffs of their business, and have caused and will continue to cause irreparable harm to Plaintiffs. It is unknown  how far-reaching the damage to Plaintiffs may be, as it is unknown how many of Plaintiffs' customers have been lost and may be lost in the future as a result of Defendants' conduct.

## COUNT ONE

## FOR PERMANENT INJUNCTIVE RELIEF

50. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

51. As a result of Defendants' conduct, individually, and/or in concert, Plaintiffs have sustained and will in the future sustain irreparable harm if Defendants Nexteppe and/or East Hills continue to interfere with and infringe upon Plaintiffs' present and prospective business.  Defendants unilaterally and wrongly substituted, permitted to be substituted, or should have known that Brooklyn Auto Group's  customer service telephone numbers on its website were substituted with Defendant East Hills' telephone numbers, and that any and/or all email inquiries submitted by consumers on Plaintiffs' Website were re-routed to East Hills. After being confronted by Plaintiffs regarding its actions, Nexteppe unilaterally halting its Website hosting services for Plaintiffs' Website on December 7, 2010, therefore, rendering said website

52. As a result of Defendants' conduct, individually, and/or in concert, Plaintiffs have sustained and will in the future sustain irreparable harm if Defendants Nexteppe and/or East Hills continue to interfere with Plaintiffs' present and prospective business, by continuing to accept, receive, administer, respond and/or reply to Brooklyn Auto Group's customer inquiries and leads East Hill receives by way of telephone and email inquiries wrongly directed to it from Plaintiffs' website for some yet unknown period, and by making statements about Plaintiffs, including, but not limited to, those made to Brooklyn Auto Group's prospective customers, which are false and/or misrepresentative, including, but not limited to, statements that Brooklyn Auto Group was out of business, that its doors were "padlocked", and/or that Defendant East Hills had taken over Brooklyn Auto Group's business.

53. Plaintiffs cannot be fully compensated in damages and are without an adequate remedy at law because the exact quantum of damages Plaintiffs will sustain will be difficult to determine, in that it is presently unknown how long Defendants have been interfering in and with Plaintiffs' business. It is presently unknown how long and the extent of damage Plaintiffs have and will in the future sustain in terms of economic and prospective economic advantage as a result of Defendants' conduct.

54. As a further result of Defendants' conduct, Plaintiffs have sustained incidental damages. If this conduct is permitted to continue, Plaintiffs will be further damaged in an amount to be alleged when additional damages have been ascertained and determined.

## COUNT TWO

## CONSTRUCTIVE TRUST

55. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

56. As a result of the Defendants' fraudulent misrepresentations and otherwise wrongful conduct as alleged herein, individually, and/or in concert, Plaintiffs have and will in the future sustain damages to its present business and prospective economic advantage as a result of Defendants' conduct.

57. Individually, and/or in concert, by reason of the fraudulent and otherwise wrongful manner in which the Defendants obtained their alleged right, claim or interest in and to the present business and prospective business of Plaintiffs', including but not limited to, customer lists, customer leads, customer inquiries, new and used vehicle sales, vehicle service revenues, customer leases, lease renewals, customer financing, and parts sales, Defendants have no legal or equitable right, claim or interest therein, but,

instead, Defendant are involuntary trustees holding said business, prospective business and past, present, and prospective revenues therefrom in constructive trust for Plaintiffs with the duty to convey the same to Plaintiffs forthwith.

## COUNT THREE

## ACCOUNTING

58. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

59. As a result of the aforementioned events, individually, and/or in concert, Defendants Nexteppe and East Hills, have received money individually and on behalf of Brooklyn Auto Group, which is due to Defendant Plaintiffs, as previously alleged.

60. The quantum of money due from Defendants is presently unknown to Plaintiffs and cannot be ascertained and/or determined without an accounting of Defendants Nexteppe and East Hills.

## COUNT FOUR

## BREACH OF CONTRACT

61. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

62. Pursuant to an agreement between Plaintiffs and Defendant Nexteppe, Defendant Nexteppe was to provide website design, management and online marketing services for Plaintiffs' website. However, at some unknown point, Defendant Nexteppe misused its position by unilaterally and wrongly caused to be substituted, authorized the substitution of, and/or should have known that Brooklyn Auto Group's customer service telephone numbers were substituted with those of East Hills on its website, and that any and/or all email inquiries submitted by consumers on Plaintiffs' Website were re-routed to East Hills. Nexteppe maintained and hosted Plaintiffs' Website bearing East Hill's contact information for some unknown period. After being confronted by Plaintiffs regarding its actions, Nexteppe unilaterally halting its Website hosting services for Plaintiffs' Website on December 7, 2010, therefore, rendering said website inactive, to Plaintiffs' detriment.

63. As set forth above, Defendant Nexteppe has failed to perform its obligations under the terms of the agreement with Plaintiffs.

64. Defendant's failure and refusal to perform its obligations under the agreement set forth above constitutes a breach of contract.

65. Defendant's breach of contract caused and will in the future cause Plaintiffs damages.

## COUNT FIVE

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

66. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

67. Implied in the agreement between Plaintiffs and Defendant Nexteppe was a covenant that Defendant would deal fairly and in good faith, and that neither party would do anything to deprive the other of the benefit of their contract.

68. Defendant Nexteppe's failure to perform its part under the terms of the agreement has deprived Plaintiffs of the benefits of their agreement.

69. Defendant Nexteppe has acted in bad faith and unfairly with respect to Plaintiffs.

70. Defendant Nexteppe's actions breached the implied covenant of good faith and fair dealing implicit in the agreement between the parties.

71. Defendant Nexteppe's breach of the implied covenant of good faith and fair dealing has caused and will in the future cause Plaintiffs damages.

## COUNT SIX

## LEGAL FRAUD

72. Plaintiffs repeat and reallege each and allegation set forth above as if fully set forth herein.

73. Defendant Nexteppe made false representations of fact, or omissions of the true state of facts, in order to induce Plaintiffs to enter into an agreement and business relationship with it.

74. Defendant Nexteppe has failed to perform its obligations under the terms of the agreement with Plaintiffs.

75. Defendant Nexteppe's false representations or omissions to disclose included, but were not limited to, the representation that Defendant would protect the sensitive, proprietary information it had access to, control of, and knowledge about regarding Plaintiffs' motor vehicle dealership, by virtue of the nature of their agreement that Defendant Nexteppe would develop, manage, exercise control and have access to Plaintiffs' Website, inventory records, marketing strategies, and other critical business and proprietary information. Instead, Defendant Nexteppe unilaterally used this information and position of trust to conspire with one of its other motor vehicle dealer clients, Defendant East Hills, which is a competitor of Plaintiffs, and provided same with Plaintiffs' critical business and proprietary information, to Plaintiffs' detriment and Defendants' benefit.

76. Defendant Nexteppe knew that the aforementioned said representations were false at the time the statements were made.

77. Alternatively, Defendant Nexteppe knew that, by omitting to disclose the true state of facts, its statements of the terms of the parties' agreement would be rendered false.

78. The misrepresentations of Defendant Nexteppe, or the facts defendant omitted to state, were material to the decision of the Plaintiffs to enter into their agreement and continue to perform the same.

79. Defendant Nexteppe intended that Plaintiff rely on its false statements (whether rendered false by misrepresentation or by omission) to their detriment and suffer damages thereby.

80. Plaintiffs acted in reliance on the false representations of Defendant Nexteppe.

81. Plaintiffs have been and will in the future be damaged by reason of their reliance on Defendant Nexteppe's false statements.

## COUNT SEVEN

## PROMISSORY ESTOPPEL

82. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

83. Defendant Nexteppe made a clear and definite promise that Plaintiffs' highly sensitive, proprietary information, which Defendant had access to, control of, and knowledge about regarding Plaintiffs' motor vehicle dealership, would be protected by virtue of the nature of their agreement that Defendant Nexteppe would develop, manage, exercise control and have access to Plaintiffs'

website, inventory records, marketing strategies, and other critical business information. Instead, Defendant Nexteppe unilaterally used this information to conspire with one of its other motor vehicle dealer clients, Defendant East Hills, which is a competitor of Plaintiffs, and provided same with Plaintiffs' critical business information as well, to Plaintiffs' detriment and Defendants benefit.

84. Defendant Nexteppe made the aforementioned promise with the expectation that Plaintiffs would rely on such promise.

85. Plaintiffs reasonably relied on Defendant's aforementioned promise by entering into the agreement for Defendant Nexteppe to manage and service its website, in expending time and money towards managing its relationship with Defendant Nexteppe, and other activities relating to Plaintiff Brooklyn Auto Group's website presence and online marketing efforts.

86. Plaintiffs were and will in the future be damaged by their reliance on Defendant's promise.

## COUNT EIGHT

### NEGLIGENCE

87. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

88. Individually, and/or in concert, Defendants negligently caused to be substituted, authorized the substitution of, and/or should have known in the exercise of reasonable care, that Brooklyn Auto Group's customer service telephone numbers were substituted with those of East Hills on its website, and that any and/or all email inquiries submitted by consumers on Plaintiffs' website were re-routed to East Hills. Nexteppe maintained and hosted Plaintiffs' Website bearing East Hill's contact information for some unknown period. After being confronted by Plaintiffs regarding its actions, Nexteppe unilaterally halting its Website hosting services for Plaintiffs' Website on December 7, 2010, therefore, rendering said website inactive, to Plaintiffs' detriment.

89. Individually, and/or in concert, Defendants have and continue to negligently interfere with Plaintiffs' present and prospective business, by continuing to accept, receive, administer, respond and/or reply to Brooklyn Auto Group's customer inquiries and leads, and by making statements about Plaintiffs, including, but not limited to, those made to Brooklyn Auto Group's prospective customers, which are false and/or misrepresentative, including, but not limited to, statements that Brooklyn Auto Group is out of business, that its doors are

"padlocked",   and/or that Defendant East Hills has taken over Plaintiffs' business.

90. As a further direct and proximate result of Defendants' negligence as set forth above, Plaintiffs sustained and will in the future sustain damages.

## COUNT NINE

## BREACH OF THE LANHAM ACT, §43 of U.S.C. § 1125(a)

91. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

92. The relationship and agreement between Plaintiff and Defendants are subject to U.S.C. § 1125(a), commonly referred to as Section 43 of the Lanham Act.

93. Defendants' actions as set forth above constitute unfair competition in violation of the Lanham Act.

94. Defendant's breach of the Lanham Act has and will in the future cause Plaintiffs damages.

## COUNT TEN

## CONSUMER FRAUD

95. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

96. The transactions, agreements, and relationship between Plaintiffs and Defendant Nexteppe is subject to the §349 of the New York State General Business Law, which states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." NY CLS Gen Bus § 349(a).

97. Defendants' actions as set forth above constitute deceptive practices in violation of NY CLS Gen Bus § 349(a).

98. Defendant's breach of NY CLS Gen Bus § 349(a) has and will in the future cause Plaintiffs damages.

## COUNT ELEVEN

## CONVERSION

99. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

100. Defendants, individually, and/or in concert, improperly and illegally converted assets of Plaintiff Brooklyn Auto Group belonging to Plaintiffs, for their own personal financial gain.

101. Defendants' actions were willful, malicious, and intentional.

102. As a direct and proximate result of Defendant's conduct aforesaid, and more specifically detailed in the preceding paragraphs, Plaintiffs has and will in the future sustain damages.

## COUNT TWELVE

## UNLAWFUL TAKING

103. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

104. As set forth above, Defendants, individually, and/or in concert, have willfully and/or negligently deprived Plaintiffs of Brooklyn Auto Group's present and prospective business, including, but not limited to, its website. Defendants caused to be substituted, authorized the substitution of, and/or should have known that Brooklyn Auto Group's customer service telephone numbers on its website were substituted with the telephone numbers of East Hills, and that any and/or all email inquiries submitted by consumers on Plaintiffs' website were re-routed to East Hills, which, in the aggregate, constitutes a theft of Brooklyn Auto Group's website.

105. Defendants, individually, and/or in concert, have deprived Plaintiffs of Brooklyn Auto Group's website and services provided thereunder for some presently unknown period of time. Defendants caused to be substituted, authorized the substitution of, and/or should have known that Brooklyn Auto Group's customer service telephone numbers on its website were substituted with the telephone numbers of East Hills, and that any and/or all email inquiries submitted by consumers on Plaintiffs' website were re-routed to East Hills, and then, after being confronted by Plaintiffs regarding its actions, Nexteppe unilaterally removed said website from the internet as of December 7, 2010.

106. As set forth above, Defendants, individually and/or in concert, have and continue to convert Plaintiffs' business assets, website, and customers to themselves, and have made false statements and misrepresentations related thereto, including, but not limited to, statements that Brooklyn Auto Group is

out of business, that its doors are "padlocked", and/or that Defendant East Hills has taken over Plaintiffs' business.

107.   As a result of Defendants' conduct aforesaid, and more specifically detailed in the preceding paragraphs, Plaintiffs have and will in the future sustain damages.

## COUNT THIRTEEN

## INTERNET DOMAIN NAME THEFT AND/OR WEBSITE THEFT

108.   Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

109.   As set forth above, Defendants, individually and/or in concert, have willfully stolen Plaintiffs' website and related business.  Defendants caused to be substituted, authorized the substitution of, and/or should have known that Brooklyn Auto Group's customer service telephone numbers on its website were substituted with the telephone numbers of East Hills, and that any and/or all email inquiries submitted by consumers on Plaintiffs' website were re-routed to East Hills, and then, after being confronted by Plaintiffs regarding its actions, Nexteppe unilaterally removed said website from the internet as of December 7, 2010.

110.   As set forth above, Defendants, individually and/or in concert, have and continue to convert Plaintiffs' business assets, website, and customers to itself, and have made false statements and misrepresentations related thereto, including, but not limited to, statements that Brooklyn Auto Group is out of business, that its doors are "padlocked", and/or that Defendant East Hills has taken over Plaintiffs' business.

111.   The foregoing conduct in the aggregate constitutes a theft of Brooklyn Auto Group's business assets, including, but not limited to, its website.

112.   As a result of Defendants' conduct aforesaid, and more specifically detailed in the preceding paragraphs, Plaintiffs has and will continue to suffer damages.

## COUNT FOURTEEN

## TORTIOUS INTERFERENCE WITH ECONOMIC
## AND PROSPECTIVE ECONOMIC ADVANTAGE

113.   Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

114.   Plaintiffs had a legitimate expectation of economic advantage and prospective economic advantage by and through Plaintiff Brooklyn Auto Group.

115.   By the actions described above, Defendants, individually and/or in concert, have interfered with the present and prospective economic advantage, and future business relationships Plaintiffs reasonably expected by and through the operation of Brooklyn Auto Group.

116.   Defendants' actions were intentional and taken with the specific purpose of harming Plaintiffs' present and prospective economic advantage, and future business relationships Plaintiffs reasonably anticipated by and through the operation of Brooklyn Auto Group.

117.   Defendants' actions were taken in the absence of privilege or justification.

118.   By the actions described above, and particularly the theft of Plaintiffs' website, Defendants have caused and will in the future cause Plaintiffs damages.

## COUNT FIFTEEN

## UNJUST ENRICHMENT

119.   Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

120.   Individually and/or in concert, Defendants have received the benefit of Plaintiff's Brooklyn Auto Group's present and prospective business, including but not limited to, its assets, property, clients, client lists, website, good will, and other unknown matters, as a result of the aforementioned actions.

121.   Defendants have accepted and retained said benefits.

122.   Defendants have failed to provide Plaintiffs with compensation in exchange for said benefits.

123.   Defendants' acceptance and retention of such benefits under said circumstances make it inequitable for them to retain said benefits.

## COUNT SIXTEEN

## CONSPIRACY

124.   Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

125.   By the actions described above, Defendants acted and are acting in concert to commit unlawful acts. Defendants knowingly and willfully conspired and agreed among themselves to sabotage Plaintiffs' Website, www.brooklynautogroup.com, a critical component of Brooklyn Auto Group's business, and to modify same without consent or authorization in order to harm Plaintiffs' business, and to make false and defamatory statements about Plaintiff Brooklyn Auto Group to its existing and prospective customers. Defendants caused to be substituted, authorized the substitution of, and/or should have known that Brooklyn Auto Group's customer service telephone numbers on its website were substituted with the telephone numbers of East Hills, and that any and/or all email inquiries submitted by consumers on Plaintiffs' website were re-routed to East Hills.  After being confronted by Plaintiffs regarding its actions, Nexteppe unilaterally removed said website from the internet as of December 7, 2010.

126.   As set forth above, Defendants, individually and/or in concert, have and continue to convert Plaintiffs' business assets, website, and customers to itself, and have made false statements and misrepresentations related thereto, including, but not limited to, statements that Brooklyn Auto Group is out of business, that its doors are "padlocked", and/or that Defendant East Hills has taken over Plaintiffs' business.

127.   Defendants knowingly and willfully conspired and agreed among themselves to harm Plaintiffs and to steal Brooklyn Auto Group's business, including, but not limited to, customer lists, customer leads, customer inquiries, new and used vehicle sales, vehicle service revenues, customer leases, lease renewals, customer financing, and parts sales.

128.   By the actions described above, Defendants have caused and will in the future cause Plaintiffs damages.

WHEREFORE Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

a. For a permanent injunction enjoining and restraining Defendants from destroying any and all records related to Plaintiffs, Nextsteppe's account management of Plaintiffs and/or East Hills, and/or Nexteppe's account management of all entities related to East Hills and/or owned and/or operated by the principals of East Hills, and for all John Doe Entities 1 to 100 and John Doe Individuals, which may not yet have been ascertained, but which, when/if deemed liable, will added to this action; from continuing to divert and/or convert Plaintiffs' present and prospective business to Defendant East Hills via Plaintiffs' website or other means; from accepting,

receiving, administering, responding, and/or replying to any and all of Plaintiffs' customer inquiries and leads; from making any and all statements relating to Plaintiffs, including, but not limited to, any statements regarding the status of Plaintiffs' business operations and/or that Defendant East Hills has taken over Plaintiffs' business; and compelling Defendant Nexteppe to reactive Plaintiffs' Website with the correct telephone numbers for Plaintiffs' business listed and to correctly route any and all email inquiries submitted via said website to Plaintiffs.

b. For a declaration that Defendants hold Plaintiffs' business and prospective business as described above as constructive trustees for the benefit of the Plaintiffs;

c. For an accounting of Defendants Nexteppe and East Hills;

d. Compensatory damages;

e. Punitive damages;

f. Pre-judgment interest;

g. Post-judgment interest;

h. Attorney's fees;

i. Costs of suit; and

j. Such other and further equitable relief as may be just and proper.

THE MARGOLIS LAW FIRM LLC
Attorneys for Plaintiffs


BY:_____
   GLEN F. HALEY

110 Wall St., 11th Floor
New York, NY 10005

PLEASE REPLY TO:
The Margolis Law Firm, LLC
5 Becker Farm Road, 4th Floor
P.O. Box 420
Roseland, NJ 07068-0420


Dated: December ___, 2010